Please be seated. Would the clerk call the case please? 3-17-0024 Gregory Prawdzik, appellant by Thomas Prawdzik Jr. v. Board of Trustees of the Homer Township Fire Protection District Pension Fund at Belize by Jeffrey Thibault Thank you. Mr. Prawdzik, good morning. Good morning, Justice. Mr. Thibault. May it please the Court, my name is Tom Raja and I represent the appellant, Firefighter Gregory Prawdzik, on an appeal of a Pension Board denial of a line of duty disability claim. The issue in this case involves the Board's application of what we believe is the wrong causation standard with respect to the disability application. The Board readily admits in the briefs in this matter that they applied a causation standard that would require my client to prove that the acts of firefighter duties were the sole cause of his underlying condition. That was post-traumatic stress disorder. By way of background, just to summarize... Well, I think we're familiar with the background. Why don't you just get to the issues? Okay, very good. We believe that the correct legal standard that should have been applied in this case was a causative factor standard. And that's the Shoepecker's Board of Trustees of the Norfolk Firefighters Pension case that I cited in my brief. The standard is the plaintiff needs to prove that the work is a causative factor in the disabling condition. We believe we did that based upon the undisputed facts that were presented before the Board at the administrative hearing. Specifically, Firefighter Prozick was able to work full unrestricted duties up until there was an incident at work on November 7th where he was driving his firetruck, the power was going about 45 miles an hour at night, accidentally hit the power switch, killed all the power to the firetruck, everything went dark, and this aggravated his underlying post-traumatic stress disorder, which as the facts bore out was the result of his deployment in Afghanistan, where a similar type scenario occurred where he was hit by his truck he was driving at the time was hit by an explosive device, left him upside down for over an hour. This manifested symptoms which caused his underlying condition to become symptomatic and ultimately disabling, prohibiting from performing any further firefighter duties with the fire department. So the real issue is nobody is disputing that this was an act of duty listed under the statute, right? The Board certainly doesn't make that argument and it's brief. Well, there's no dispute about that. I would agree with that. And there is a disability, it's just whether it's line of duty. That's correct. 50% difference in the disability payment. That's correct. Okay. So we have a disability, so there's no question about that. So the real issue is causation, isn't it? Correct. Because of the factor or sole cause because they cite Robbins. Right. And we believe that the Robbins case as well as the Hammond case cited by the defendants is distinguishable from the facts here. The Robbins case, Illinois Supreme Court case, dealt with a police officer. As I'm sure you're aware, the act of duty standard for a police officer is quite different than that of a firefighter. In the Robbins case, they applied the act of duty standard, which means you have to demonstrate that a specific act unique to police duties was the cause of the disabling condition. The firefighter standard is quite different than that. You just have to demonstrate that an act of duty was part of the ordinance or rule of regulation of the department, which we had here. Firefighter products was coming back to the station from a call when this incident on November 7th occurred. In addition, the medical evidence bore out that the job duties requiring him to drive a fire truck that was similar to that he drove in Afghanistan, that he would not be able to perform that duty, which is required by his job description. And that was an aggravating factor of his underlying post-traumatic stress disorder. So it really comes down to sole causation versus aggravating, right? Correct. Or a causal factor. A causal factor. And you're saying that firefighters, causal factor, policemen sold on mental disabilities. The board makes a distinction between mental disabilities and physical disabilities. Our argument is there is no such distinction. The pension code doesn't make a distinction with respect to physical or mental, nor does the case law, if you really look at it. But the Hammond case that the board relies heavily upon, there was no evidence, no medical evidence to support even a causative factor analysis. It's not argued in that case specifically, but what the holdings in the Hammond case, they look at what the medical doctors actually said, what the evidence said. And there they said that the job was job stress and dissatisfaction stemming from interpersonal problems was what caused the saving condition there. Here, even the sole doctor that the board relied upon, Dr. Frank, he says that the cause of the underlying post-traumatic stress disorder was the deployment to Afghanistan. But then he goes on to say that the trauma on the job aggravated the post-traumatic stress disorder, causing anxiety, hypervigilance, insomnia, panic attacks, and that's what prohibited him from performing the duties of a firefighter. So the job is what aggravated the underlying condition, and that's what was the cause of the disability. He was able to work up until this incident on November 7th, full unrestricted duties, even with the diagnosis of post-traumatic stress disorder. So the underlying condition isn't what caused the disability here. It was the incidents at work, the November 7th incident, and having to, part of his job duties, being a truck that is similar to that that he was driving in Afghanistan in all respects, that's what caused the disabling condition here. Not simply having post-traumatic stress disorder from his deployment. And that's why we believe we've met our burden of proof under the case law here to demonstrate that the work was a causative factor in his disabling condition. There's no evidence to the contrary. How about the third doctor? I mean, because you are saying there's an error both ways, one on law and one on fact. And the fact is manifest way. Right. On the fact that we believe that their reliance on Dr. Frank only on the issue of the underlying, cause of the underlying condition was errored by the board. That was against the manifest way of the evidence. Because you can't just, you can't cherry pick just certain parts of the doctor's opinion when Dr. Frank indicates that, as I mentioned, that the cause of the disability was, at least in part, the work of a firefighter. And not generalized job stress like you had in Robbins. There was specific trauma on the job, November 7th, and having to be in a fire truck that was similar to his truck in Afghanistan. So those specific incidents, the doctors, the evidence proved it was a causative factor in his disability. When you look at the three doctors in total, while the board only relied upon Dr. Frank, Dr. Ref also indicated that the job at work was an aggravating factor and aggravated his pre-existing post-traumatic stress disorder. Dr. Wine's opinion, not relied upon by the board, said that his work exacerbated his underlying condition, but didn't get specific as to what aspects of his job actually aggravated the condition. But the plan only needs to prove, there need only be some confident evidence in the record to support his claim. We have that with Dr. Frank that the board relied upon, and we have it with Dr. Ref. And I would submit Dr. Wine also supports that he just doesn't get real specific in his report and it wasn't really followed up on by the board at the hearing. Can the board actually acknowledge that it triggered, that the incident at work triggered the post-traumatic stress reactions? The board does, and in its brief, I think at page 31 of the response brief, they admit that the incident did trigger symptoms of Embersynthesis, and it did trigger symptoms of the underlying condition. Their argument is that just triggering symptoms is insufficient to prove cause. But this, like in the Hammond case, where they actually said, well the board found there that the incidents at work, the generalized job stress, triggered symptoms of his anxiety, and that was insufficient. However, there, there wasn't any evidence to demonstrate that those symptoms caused the disability. In fact, the evidence was the opposite. The doctors there said that the disabling condition was the result of things outside of work and had nothing to do with the work. Whereas here, the doctor said the symptoms are what caused this to become a disabling condition. It manifests the anxiety, the insomnia, the panic attacks that were underlying. So you're using a chain of events analysis? It's part of it, yeah. Certainly, I think that you can, I actually do cite that in my initial brief, that this is a chain of events. Worked under restricted duties up until this incident, and then it's clear based on the medical and the doctor's opinions that this incident was at least in part a causative factor in the disability. And we submit that's sufficient prior proof. And that's the legal standard. That's the legal standard under SHUPEC as well as Carrillo that I mentioned in my brief. So your position, your argument would be that if it triggered the underlying, then it becomes a causative factor? If those symptoms are what causes the firefighter to become disabled, if it's a temporary manifestation or something along those lines where the evidence doesn't support that those symptoms are disabling, I think the board may be sufficient in denying a disability. We didn't have that evidence here. Well, if they're not disabling, he wouldn't even get a not-in-line-of-duty disability, right? Well, yeah. We certainly have to prove that your condition has prevented you from performing forensic duties for at least 12 months or expected the last 12 months. I guess in answer to Judge McDay's question, you were saying whether, you said, well, if they're not disabling, then he doesn't get any pension, line-of-duty or not-in-line-of-duty, right? If he's not disabled. Correct. All right. So I was just trying to understand your answer to Judge McDay's question. Yeah. I mean, that certainly has to prove disabling. You know, it doesn't necessarily have to be a work. I mean, you can get a non-duty without demonstrating that it's work-related. But here, the medical has to support it. And when you look at Robbins and Hammond, the medical didn't support the evidence that was presented at the hearing, didn't support that the symptoms were disabling. They said the symptoms manifested as a result of maybe some generalized work on the job on the police side on Robbins, but there wasn't a specific act of duty that caused the disabling symptoms. So, you know, it may seem like a simple nuance, but I think it's not. In this case, especially where the board relies upon, one physician relied upon supports that the symptoms were the disabling factor here. That's Dr. Frank. That's Dr. Frank. Correct. Unless there's any other questions from the bench, we would ask that you reverse the decision of the pension board and find that firefighter products is entitled to a line-of-duty disability, having met his burden under the statute and have improved causation with respect to his disability. I reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Goodlow. Good morning. Good morning, Your Honor. May it please the Court. My name is Jeff Goodlow. I represent the pension board in this matter. I would agree that the issue really is one of causation and what the causation test is for line-of-duty mental disability pension claims. The cases that have been cited by the plaintiffs, Superic, Superic involved lower back, Carrillo involved in knee, they're physical disability claims and it's a different causation standard. What's your basis for saying that? Your Honor, the basis comes from Robbins. The Supreme Court, Robbins was a line-of-duty mental disability case for a police officer. And the Supreme Court interpreted the phrase, incurred in or resulting from in the line-of-duty disability statute for police officers, and it specifically held that those words do not or are not the equivalent of the word cause. They also rejected the tort concept approximate cause allows for more than one cause of the injury. And the Supreme Court also rejected the claim that one's entitled to a line-of-duty mental disability pension, quote, so long as they show that one of the causes of the disability results from an act of duty. So in the context of line-of-duty mental disability pension claims, the Supreme Court has held that you have to show. What was that last statement that you made? Something about line-of-duty or whatever. You kind of, because it seemed to be the one that you really want to argue. Right. So the Supreme Court rejected the claim that one's entitled to a line-of-duty mental disability, quote, so long as one of the causes of the disability resulted from an act of duty. The Supreme Court rejected that. Well, I think you're wrong on that. An act of duty is different in a police situation, a policeman's situation than a fireman's, isn't it? It is different. They define in the statute what acts of duty are. They are different. But respectfully, this case is not about an act of duty or the definition of an act of duty. The pension board doesn't dispute that November 7, 2014, driving the rig on that night, that that is an act of duty under the pension code. No, no, no. I'm talking about Robbins. In Robbins. Yeah, Robbins did. I think the appellate court brought in acts of duty that didn't rely on acts of duty that are in the statute. Didn't they bring in a constellation of activities? Well, there were other issues going on in that case. So there were non-occupational, non-act of duty causes of the disability. Isn't that really the basis for the reversal? Well, it's not. Nothing else was dicta, maybe? No, I don't think it was dicta. In Robbins, the plaintiff was making a claim that in some part my disability resulted from the act of duty and me witnessing as a police officer somebody commit suicide by shooting themselves in the face with a shotgun. That was their claim. They said that in some part caused my mental disability pension. And the Supreme Court said it may have contributed to a symptom, but it was not the cause. There were other causes rooted in non-occupational sources. So in police situations, there's a sole cause standard? That's correct. Is that in firefighter situations, or is it just engrafted? No, it is. I would argue, Your Honor, that it has to be the same for firefighters. The words, the operative words are incurred in or resulting from. They're in the police pension code. They're in the fire pension code. So the Supreme Court in the police pension code has said those words require that your disability result solely from an act of duty. There's no reason why those identical words that are used in different sections of the Pension Act but involving the same concept, the same subject, disabilities, shouldn't be treated any differently. What the plaintiff is arguing here for is a situation where police officers have to show that their mental disability resulted from the sole performance of an act of duty, whereas when it comes to firefighters applying for an act of duty or line of duty disability pension, they can use the causative factor test. They can use the sum contribution test. It's completely inconsistent with Robbins. It sets up two different tests. And there's no legislative intent to the authority either way to suggest that the Supreme Court was wrong with Robbins and there should be a different test for firefighters. So I think that when the Supreme Court has spoken on what that language means in the context of line of duty mental disability claims, respectfully, I think that it binds this court. I think it bound the trial court. How about physical disability for policemen? I'm sorry, Your Honor. Physical disability. Physical disability. Sure. Physical disability. Is there any difference in causation standard? Physical disability, the causation standard is some causative factor. So there is a difference depending on the disability. There is a difference between mental and physical. So whether you're talking about a police officer or a firefighter, in a physical disability claim, you can use the causative factor test. But when it comes to mental disability pensions, the test is different. And the courts acknowledge, the Supreme Court acknowledged, that this is a judicial outgrowth of some attempt to articulate a causation standard in this kind of nebulous area of mental disability claims. And, you know, if there is a... Why is it nebulous? I'm curious. I thought we moved beyond the distinction between mental versus physical. The courts have not moved beyond that distinction. I think it's just very difficult... Maybe behind the times. That's true. But why is it nebulous? Is it because there is no metric or self-reporting? I think it's very difficult in the context of where you have somebody that has, in this case, at this point, that has significant pre-existing post-traumatic stress disorder to determine what is the source of that, what is the cause of this. Is it an act of duty as a firefighter or is it something that predates it? I think it's just very difficult to make that call for a position as opposed to saying somebody has degenerative arthritis in their knee and they're chasing after a suspect and it injures their knee. I don't know... We have three doctors here. Yes. They're chosen by the board. We do. So they're not plaintiff's defense, pick and choose. You've got three of these. All three of them didn't have a problem with that, did they? Well, they did. You said it's difficult, but they didn't seem to say it was. Well, they did not. There are differences in the opinions, to be honest with you. Yeah, but to the ultimate issue that we're talking about, weren't they pretty much on the same page? I disagree with that. I do not think that the doctors are on the same page with respect to that. I think Dr. Frank's opinion rebuts the plaintiff's claim entirely, and it's consistent with the holding from Hammond and from Robbins. And I'd like to, if the court would indulge me, I'd like to read the relevant portion from Dr. Frank's opinion, assuming that I can find it in my notes here. Dr. Frank wrote, quote, that the trauma that led to the development of the PTSD, and it's the PTSD that is the sickness that's disabling, not anxiety, but the PTSD. So PTSD doesn't just include anxiety. It includes the panoply of factors and symptoms. So anxiety, depression, insomnia, detachment, hypervigilance, all these types of symptoms that render this plaintiff disabled as a firefighter. But the PTSD is his combat experience in Afghanistan. His extreme avoidance and anxiety of driving work-related vehicles and his employment with the district is due to his combat experience. Firefighting paramedic vehicles, although not combat vehicles, remind him of the trauma he sustained in Afghanistan. With the information available to me at this time and with a reasonable degree of medical certainty, his combat exposure, not any incident or trauma in his employment, is the cause of his PTSD. Cues from his employment, such as accidentally turning off the lights in the Tower 31 or driving a work-related vehicle, may aggravate his PTSD at times, but are not the cause of the disorder. And it's the disorder that is disabling. And so when you take that opinion and you hold it up in front of the Hammond opinion, it's identical. In Hammond, the firefighter claimed that, I suffered anxiety while on duty performing acts of duty. There are a number of things. He was pulling a hose on a fire call, developed anxiety. He was assisting on a medic call. He experienced anxiety. He was performing training, which is an active duty under the pension code for firefighters. He experienced anxiety, a panic attack, and never came back to work. And at the end of the day, the Hammond case says, that's fine, but all that happened there is that it triggered a symptom of the underlying condition. And it's not the cause. The underlying condition is rooted in non-occupational sources, just as it is here in this case. There are non-occupational sources of the underlying PTSD, clearly from the record. I mean, clearly it's the result of him being in Afghanistan. If you take Afghanistan out of the equation, it doesn't exist, and you have a firefighter who, you know, has no prior mental health issues and starts responding to calls where he sees children burned alive or somebody decapitated in a car accident or somebody dies while he's performing some sort of medical procedure to save this person's life, and as a result of that and the cumulative effects of that, they develop the mental condition and can no longer do the job of a firefighter, that firefighter is entitled to a line-of-duty disability pension, whether it be under Robbins or Hammond. They get it. That's not the case that we have here. This is a case where the PTSD is caused by the exposures in Afghanistan, and in accordance with Hammond, just this act of duty triggered a symptom, but not the underlying PTSD that is the sickness within the meaning of the pension bill. That's the distinction here. The plaintiff wants to say, I never worked again after November 7, 2014. Well, that's not true. He worked two more shifts after that date and didn't report it until November 16. The pension board doesn't dispute that he had trouble driving the rigs, and when he shut off the rig on that day, it triggered a symptom of anxiety. We don't dispute that. But that's not what caused him to be disabled. It's convenient to say, I'm being brought up for a fitness for duty evaluation, I'm probably going to lose my job here, to say this is the cause of my disabling PTSD, this is why I can't do the job anymore. It's just inconsistent with the record. A month before this incident happened, he's telling his doctor, Dr. Desai, he's not talking about his job as a firefighter and performing acts of duty as a firefighter. He's saying, I'm sick of this anxiety, I'm sick of thinking about this war, I want to get this out of my head, I cannot take it anymore. It all relates back to Afghanistan. And I think that if your honors adopt a contribution theory or some causative factor theory, it's setting up two different causation standards for police officers and firefighters based on identical language in the statute. Active duty and cumulative effects of active duty, it's not what this case is about. It's not. The plaintiff is going to argue that it is, probably in reply. But it's just not about that. It's about the language incurred in or resulting from. The Supreme Court has ruled on that. And it would be a situation where, you know, if you made that ruling, then the firefighter in hand should not have gotten, or if you made that ruling, then the firefighter in hand should have received a line of duty disability pension. Second District says he doesn't. The police officer in Robin should have received a line of duty disability pension. The Supreme Court says he doesn't. So I don't have any other points to make. I think I've taken up most of my time. If there are any questions from the panel, I'd be happy to answer them. So you basically reject the notion that there are two different causative standards for the police and for the fire? In the context of line of duty mental disability pensions, I do reject that. The standards aren't the same in terms of the causation test used on those types of applications. And in the police code and the fire code, the language is identical, where it says physical and mental. And you're saying that in the police cases, the Supreme Court, or in the police case, the Supreme Court made a distinction with regard to mental. Absolutely. They do, Your Honor. Is there any case that makes that same distinction with regard to fire cases? That case has not come up. There is no case that makes that same distinction with respect to fire in the Supreme Court. But I would argue that Hammond absolutely, they don't cite to Robbins, but they absolutely adopt that standard. Because if they did not adopt that standard, then the firefighter in Hammond would have received a line of duty disability. So basically what we have in the structure of the courts, we have a Second District opinion. Supporting you, you say, you argue. Hammond, yes. We have no Supreme Court decision on firefighters. Not on firefighters, but the language is identical. And so when the language that's used in different sections of the pension code involving the same subject is identical, then they should be read harmoniously. They should be read the same way. The case that I would point the court to on that is Jensen v. East MD Fire Protection District Firefighters Pension Board, where there was no definition of the phrase active duty in Article 4. And so what happened is that the court said, well, we want to read the phrase active duty harmoniously, so we go and we look at Article 6 and we take it from there. And so they applied the same standard. Less on the population difference, right? Yes. One Chicago, Article 6. Article 4 is 500 or fewer. Correct. All right. So any other questions? No. All right. Thank you very much for your time. On behalf of my clients, I do appreciate it. Thank you. Thank you. Mr. Raja, rebuttal. Thank you. I agree with counsel in the fact that there is no different standard on causation with respect to police and fire. The standard is, as I set forth in the SHPEC v. the Norfolk Firefighters Pension Fund, that disability may result from multiple causes, but in order to obtain a line of duty disability pension, you must prove that your work was a causative factor in the disability. Where I think the analysis is flawed by the board here, is they're saying that the causative factor is in the underlying condition. You must show that the work caused the underlying condition. And that's not the standard. You must show that the work was a causative factor in the disability. And there is a difference there. How do you define the disability in this case? Here the disability, I think, is, as Dr. Frank, the physician the board relied upon, found. And he said the exposure to trauma on the job aggravated firefighter projects underlying post-traumatic stress disorder, causing the anxiety, hypervigilance, insomnia, and the panic attacks, which prohibited him from performing work as a firefighter. So the disability is not this, in your view anyway, is not this little box called PTSD. Disability is the anxiety, et cetera, et cetera, et cetera. And you're claiming that that is what prevents him from doing his acts of duty as a fireman, and that's why he's disabled. Exactly. And that on a chain of events, that was not the case prior, but after the incident subsequently it was, that he was unable to perform those duties. Right. On a chain of events, even with post-traumatic stress disorder, which we agree, the cause of post-traumatic stress disorder was the combat experience in Afghanistan. There's no doubt about that as far as the doctors are concerned. But he was able to work full unrestricted duties with that condition. It was the job duties, both the November 7th incident and the fact that his job duty requires him to get in a vehicle that's similar to that that he had in Afghanistan, it was those things that the doctors found had caused him to become disabled, that that aggravated any underlying post-traumatic stress disorder. It was the heightened now anxiety, panic attacks, and the symptoms that restrict him from performing the full unrestricted duties of a firefighter. Why is Hammond not, of course it would never be controlling on our district, it's a second district case, but why is Hammond not to be followed? Well, because, and I think Hammond, again, I think counsel, the analysis that the board makes with Hammond I think they overreach. When you look at Hammond, the case citing specifically from it, they say the evidence there that plain is inability to function as a firefighter. They're looking at what's causing him to not be able to work full unrestricted duties as a firefighter. His inability to function as a firefighter was a result of his personality, poor interpersonal communication skills, sensitive to criticism and disapproval from authority. But nothing from his job duties was a cause of his disability. They said the underlying causes were external to and independent of his duties as a firefighter. So I think Hammond, they have the right causation standard. But they look at it and say there was nothing, the evidence didn't support that any part of his job aggravated symptoms that caused him to be unable to perform his duties as a firefighter. Where here, the symptoms certainly do prevent him from performing his duties as a firefighter and it was his job that caused the manifestation of those symptoms. So I think the standard is right in Hammond. I just think they looked at the evidence there and said the board was justified in denying the minor duty there because the facts supported that the job wasn't the reason that he couldn't do the job as a firefighter, the acts that he alleges in Hammond. And same thing with Robbins. I think the standard in Robbins, when you ultimately look at the holding, what the court says in Robbins is the stress related to police work was not connected to any specific act of Robbins' duties as a police officer. Again, it's analyzing active duty where it had to show a unique specific act of police duties there. And there the board found that the record contained insufficient evidence that the stress resulted from the performance of an active duty. Whereas here the evidence supported that the work aggravated the underlying post-traumatic stress disorder. And in Robbins, again, they show the record contained ample evidence that the stress was just the result of anxiety over job performance. It was generalized job anxiety. There wasn't a specific act of duty in Robbins. Here there was acts of duty. So I think the board just simply, you know, one of the things our counsel mentioned, he said that you have to prove that your disability is solely from the act of duty. Nowhere in Robbins, in Hammond, in any of the case law does it say on a mental disability there's some heightened standard that you have to demonstrate the sole cause was your work in causing a disability. It just needs to be a causative factor. And it has to be supported by the evidence. So here we've done that. We've met our burden of proof. We've shown that the trauma didn't lead to the development of his underlying disease. What trauma? The trauma was when he was driving 45 miles an hour down the road during his work, all the lights and the power to the truck go out. What's traumatic about that? Well, to the normal person, like you and I driving down the street, it may be traumatic for a split second and then you turn on the lights and go, God, thank God nothing happened. We're okay here. Let's move on. And you go back and you go about your life. With a guy that has an underlying condition from being in the war and having a similar, in his mind, situation happen where everything goes dark and he's upside down in a car that looks exactly like his fire truck, this causes his underlying symptoms to manifest itself where he can't function as a firefighter anymore. You know, that's the hard part with mental disability claims. Sometimes we don't understand why it would affect one person different than another. But the case law that I cite too, which is the Carrillo vs. Parkridge Firefighters Pension Fund, it says even if a person is susceptible to even a minor trauma, that the benefits would still be a causative factor. Benefits would be competitive. If he had an underlying disability, it would still be a causative factor in his disability. There was a knee injury, but it was a very minor trauma that aggravated the underlying knee injury and they found that was considered a line of duty claim. So, you know, I know sometimes you may look at a mental disability and say, well, an average person, simply the lights going out on an engine may not be disabling. Unfortunately, with respect to Firefighter Prozick, who had this underlying condition from his time in the war, this was a traumatic scenario for him. And the medical supports that this was a traumatic event that caused him to become disabled and entitled to a line of duty disability. So we'd ask that you reverse the decision of the pension fund and award Firefighter Prozick a line of duty disability. Thank you very much. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel exchange. All right. This court is in recess.